**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CPR MANAGEMENT, S.A.,** | |
| *Petitioner,* | **CIVIL ACTION NO. 18-1973** |
| **v.** | |
| **DEVON PARK BIOVENTURES, L.P. & DEVON PARK ASSOCIATES, L.P.,** | |
| *Respondents.* | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                                   **May 29, 2020**

Petitioner CPR Management, S.A. filed a petition in the Court of Common Pleas of Philadelphia County seeking to confirm the award issued in an arbitration proceeding against Respondents Devon Park Bioventures, L.P. and Devon Park Associates, L.P. (collectively, "Devon Park"). Devon Park removed the action to this Court, and filed a cross-motion to vacate the award. For the reasons that follow, the arbitration award will be confirmed.

**I.       BACKGROUND**

The background, although undisputed, is complex and involves financial deals and litigation in several countries. Devon Park Bioventures, L.P. is a venture capital fund formed as a Delaware limited partnership to invest in early-stage biotechnology companies. Devon Park Associates, L.P. is its general partner. In 2006, Sebastian Holdings, Inc. ("SHI"), which is controlled by Alexander Vik, became a limited partner by obtaining a 23% interest in Devon Park. Pursuant to Section 5 of the Limited Partnership Agreement ("LP Agreement"), limited partners are entitled to certain distributions.[1] Section 13.8 of the LP Agreement provides for arbitration, administered by Judicial Arbitration and Mediation Services ("JAMS"), to resolve

---

[1] Ex. 2, Carroll Aff. [Doc. No. 32-1].

any disputes relating to the LP Agreement. Section 13.6 of the LP Agreement provides that Delaware law governs the Agreement. Section 11 of the LP Agreement allows a limited partner to assign its interest in the partnership with certain conditions, including general partner consent.

Beginning in 2008, SHI and Deutsche Bank became embroiled in litigation. In 2013, a court in the United Kingdom issued a judgment that SHI owed Deutsche Bank approximately $235 million. Since that judgment, Deutsche Bank has attempted to collect against SHI's assets all over the world.

In 2014, pursuant to an Assignment Agreement, and with Devon Park's consent, SHI assigned its interest in Devon Park to Universal Logistics Matters, S.A. ("ULM"). As part of the Assignment Agreement, SHI and ULM each made certain representations and warranties.[2] During the arbitration proceedings, the parties stipulated that ULM is the same legal entity as Petitioner CPR.

After the assignment, Devon Park successfully wired a required distribution to ULM/CPR. However, a second distribution was rejected and flagged by the banks for regulatory concerns. At that point, Devon Park learned that Deutsche Bank was contending that SHI fraudulently transferred its interest in Devon Park to avoid the English court's judgment. Deutsche Bank alleges that in 2012, SHI purported to transfer its Devon Park interest to VBI Corporation, a Turks and Caicos Islands entity allegedly controlled by Vik, without Devon Park's knowledge or consent.[3] Therefore, Deutsche Bank asserts that SHI's subsequent assignment to ULM/CPR—which it alleges is also controlled by Vik—in 2014 is void because the representations and warranties in the Assignment Agreement were fraudulent. Accordingly,

---

[2] Ex. 3, Devon Park's Answer, Counterclaims/Cross-Motion [Doc. No. 18-4].

[3] Ex. A, Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19-1].

Deutsche Bank argues that the Devon Park interest should revert back to SHI, making it available to satisfy Deutsche Bank's judgment.

Not knowing how to disperse required distributions, Devon Park sought to intervene and interplead the partnership funds in a 2016 New York state court proceeding in which Deutsche Bank sued Vik and SHI seeking to set aside the transfer of the Devon Park interest to ULM/CPR.[4] That suit was dismissed for lack of personal jurisdiction. Six months after Devon Park sought to intervene in the 2016 New York Action, in March 2017, CPR filed a Demand for Arbitration against Devon Park with JAMS in Philadelphia based on Devon Park's failure to make distributions required under the LP Agreement totaling close to $50 million ("Withheld Distributions"). Gregory P. Miller, Esquire was designated as arbitrator. In June 2017, Deutsche Bank submitted a letter to Miller requesting permission to participate in the arbitration as it maintained that it could provide context for determining whether CPR was entitled to the Withheld Distributions.[5] Devon Park supported Deutsche Bank's request while CPR opposed it.[6] Miller denied the request. Devon Park then answered the Demand, and, relevant to this proceeding, also asserted a counterclaim seeking a declaratory judgment on whether the assignment between SHI and ULM was valid. The parties engaged in discovery and, in late October 2017, a Final Hearing was set for February 2018.

In November 2017, Deutsche Bank filed two more lawsuits. The first lawsuit was filed in Delaware Chancery Court against Devon Park, SHI, and ULM seeking to enforce its judgment

---

[4] *Deutsche Bank AG v. Vik*, No. 652156/2016 (N.Y. Sup. Ct. New York Cty.).

[5] Ex. G, Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19-7].

[6] Ex. 2, Devon Park's Answer, Counterclaims/Cross-Motion [Doc. No. 18-3] ("Arbitration Award"). Devon Park has never disputed that it is required to make the distributions. Rather, Devon Park has consistently stated that it fears that it could be subject to inconsistent or conflicting rulings because both Deutsche Bank, based on the English court judgment against SHI, and CPR, based on the assignment from SHI, are claiming the distributions.

against SHI and require Devon Park to pay it the Withheld Distributions.[7] Devon Park filed an interpleader in the Delaware Action requesting that the court direct payment of the proceeds. The second lawsuit was filed in New York state court against ULM asserting that the transfer of the Devon Park partnership interest from SHI to ULM was fraudulent.[8]

Devon Park then sought to stay the arbitration, explaining that because Arbitrator Miller had denied Deutsche Bank's request to participate in the arbitration, not all of the parties claiming the Withheld Distributions were participating, and therefore a final resolution could not be reached.[9] In essence, Devon Park argued that if Arbitrator Miller ruled in CPR's favor but one of the courts eventually ruled in Deutsche Bank's favor, then it would be subject to inconsistent rulings. Thus, Devon Park requested that the arbitration be stayed so that a court with all of the relevant parties before it could make a final decision as to who was entitled to the Withheld Distributions. CPR responded that the arbitration was brought to enforce CPR's present rights to the Withheld Distributions and CPR's rights were not conditioned upon the outcome of litigation with Deutsche Bank.

In late December 2017, Devon Park's Motion to Stay was denied during a telephonic status conference. Shortly thereafter, Arbitrator Miller issued a Case Management Order that granted CPR's request to dismiss Devon Park's counterclaim but allowed discovery relating to the LP Agreement, Assignment Agreement, and related documents so that Devon Park could obtain evidence relating to its defense that the assignment was fraudulent and present this defense at the Final Hearing.[10] Devon Park responded by letter on January 9, 2018, refusing to

---

[7] *Deutsche Bank AG v. Devon Park Bioventures, L.P., et al.*, No. 2017-822-AGB (Del. Ch.). This case remains pending.

[8] *Deutsche Bank AG v. Universal Logistics Matters, S.A.*, No. 656981/2017 (N.Y. Sup. Ct. New York Cty.).

[9] Ex. B, Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19-2].

[10] Ex. C, Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19-3] at 2.

participate in the arbitration because it would serve "no valid purpose" without Deutsche Bank because "it cannot achieve a full and final resolution as to who is ultimately entitled to partnership distributions."[11]

On January 17, 2018, Deutsche Bank filed a motion for expedited proceedings and a motion for a temporary restraining order in the 2017 Delaware Action seeking an order preventing Devon Park from paying CPR the Withheld Distributions. Devon Park did not oppose the motion. The Delaware Court of Chancery denied the motion for expedited proceedings, but granted Deutsche Bank's request for a temporary restraining order and held that Devon Park was prohibited from distributing the Withheld Distributions. The court did not, however, restrain the arbitration proceedings from continuing.

The arbitration Final Hearing was held in February 2018, without the participation of Devon Park. Two weeks later, Arbitrator Miller issued an Arbitration Award in CPR's favor. Miller explained that Devon Park consented to the assignment of SHI's interest to ULM/CPR, and that no provision in the LP Agreement permitted Devon Park to withhold distributions because another party claimed to have a right to that distribution. Therefore, Arbitrator Miller held that CPR "is entitled to payment of the Withheld Distributions along with pre-judgment interest from January 1, 2016, compounded quarterly from and calculated at 5% above the Federal Reserve Discount Rate in accordance with 6 *Del. C.* § 2301(a)."[12] However, Arbitrator Miller suspended Devon Park's obligations (including the accrual of post-judgment interest) while the TRO in the 2017 Delaware Action prevented Devon Park from paying the Withheld Distributions to CPR.[13]

---

[11] Ex. D, Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19-4].

[12] Arbitration Award at 13.

[13] *Id.*

On April 30, 2018, CPR filed a petition in Pennsylvania state court to confirm the award. Devon Park timely removed the petition to this Court[14] and filed an answer and a cross-motion to vacate or modify the Arbitration Award.[15] Devon Park also sought to interplead Deutsche Bank into this proceeding as a third-party defendant under Federal Rule of Civil Procedure 22. After conducting a telephone conference with counsel for the interested parties, including Deutsche Bank, the Court issued an order permitting CPR to file a motion to strike the interpleader claims before continuing with the confirmation proceedings.[16] After all parties briefed the interpleader issue, the Court granted CPR's Motion to Strike Devon Park's Interpleader Claims as to Deutsche Bank, and terminated all third-party claims and parties.[17] The Court now decides CPR's petition to confirm the award and Devon Park's cross-motion to vacate the award.

## II.    JURISDICTION

"In 1970, the United States acceded to the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958] and supplemented its action through the enactment of legislation."[18] As CPR is a Panamanian entity, the parties do not dispute that the Convention applies to this proceeding.[19] Devon Park removed this action pursuant to 9 U.S.C. § 205, which provides that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the

---

[14] Doc. No. 1.

[15] Doc. No. 18.

[16] Doc. No. 22.

[17] Doc. No. 58.

[18] *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2006), *as amended on reh'g* (Sept. 28, 2006) (citing 9 U.S.C. § 201 *et seq.*).

[19] *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 286 (3d Cir. 2010), *as amended* (Dec. 7, 2010) (explaining that the Convention applied to a dispute between Pennsylvania insurers and reinsurers largely located in the United Kingdom, in which the arbitration and confirmation proceeding took place in Pennsylvania).

defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."[20] Therefore, this Court has jurisdiction over this proceeding.

### III.   LEGAL STANDARD

Ordinarily, "[u]nder the Convention, a district court's role is limited—it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award."[21] However, "[w]hen both the arbitration and the enforcement of an award falling under the Convention occur in the United States, there is no conflict between the Convention and the domestic FAA because Article V(1)(e) of the Convention incorporates the domestic FAA and allows awards to be 'set aside or suspended by a competent authority of the country in which . . . that award was made.'"[22] Therefore, because both the arbitration and enforcement action were brought in the United States, and there is no indication that the parties expressed a "clear intent" that "FAA default rules" would not apply, the Court looks to whether vacatur is warranted under the FAA.[23]

Section 10 of the FAA provides "four narrow grounds" for a federal court to vacate an arbitration award.[24] Relevant to this proceeding are §§ 10(a)(3) and (4), which apply "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

---

[20] 9 U.S.C. § 205.

[21] *Ario*, 618 F.3d at 290, 292 (quoting *Admart*. 457 F.3d at 307); *see also* 9 U.S.C. § 207.

[22] *Id.* at 292; *see also* 9 U.S.C. § 208 ("Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.").

[23] *See Ario*, 618 F.3d at 290.

[24] *Id.* at 295.

shown . . ." and "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[25] Also relevant is § 11, which allows a court to modify or correct award in three situations, including "[w]here there was an evident material miscalculation of figures . . ."[26]

However, district courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."[27] "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances'"[28] as "a court's review of an award under the FAA is 'highly deferential.'"[29] In sum, "when parties agree to resolve their disputes before an arbitrator without involving the courts, the courts will enforce the bargains implicit in such agreements by enforcing arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum."[30]

## IV.    DISCUSSION

Devon Park argues that the Court should vacate the Arbitration Award based upon Arbitrator Miller's 1) denial of its motion to stay the arbitration proceeding and 2) dismissal of its counterclaim that SHI's assignment to ULM/CPR was invalid. Devon Park argues in the

---

[25] 9 U.S.C. § 10(a)(3), (4). The two other grounds, not relevant to this proceeding, are "where the award was procured by corruption, fraud, or undue means" and "where there was evident partiality or corruption in the arbitrators." *Id.* at §§ 10(a)(1), (2).

[26] 9 U.S.C. § 11(a).

[27] *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279–80 (3d Cir. 2004).

[28] *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)); *see also Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (quoting *Swift Indus. v. Botany Indus.*, 466 F.2d 1125, 1130 (3d Cir. 1972)) (explaining that it is "well established that the 'court's function in confirming or vacating a commercial [arbitration] award is severely limited.'").

[29] *PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd.*, 400 F. App'x 654, 655 (3d Cir. 2010).

[30] *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *as amended* (Apr. 4, 2012), *aff'd*, 569 U.S. 564 (2013).

alternative that the Arbitration Award should be modified to either eliminate the award of
prejudgment interest or to calculate the interest owed at the simple rate, rather than the
compounded rate. CPR seeks confirmation of the award in full and also requests attorneys' fees
as it asserts Devon Park has acted vexatiously.

### A.  Arbitrator Miller's Denial of Devon Park's Motion to Stay

Devon Park contends that the denial of its request for a stay constituted misconduct under
§ 10(a)(3) of the FAA. The Third Circuit has defined misconduct "as conduct 'which so affects
the rights of a party that it may be said that he was deprived of a fair hearing.'"[31] Courts apply a
"reasonable basis" test when reviewing an arbitrator's refusal to postpone a hearing.[32] Under this
standard, "an arbitrator's decision to deny a postponement should not be disturbed if there is a
reasonable basis for the decision."[33] Devon Park argues that Miller did not have a reasonable
basis for denying its request for a stay.

Before reaching the merits of Devon Park's argument, CPR argues that § 10(a)(3) does
not apply for two reasons. First, CPR asserts that Devon Park did not actually seek a
"postponement." Without providing any support for its proposition, CPR asserts that a
"traditional postponement" under § 10(a)(3) is intended to provide "more time to prepare a
defense," but that Devon Park "sought an *indefinite* stay, one likely to be years-long, that would
force CPR to await the Bank's latest steps to recover from SHI before CPR could enforce its
rights against Devon Park."[34] However, "stay" is defined as "[t]he postponement or halting of a

---

[31] *Coastal Gen. Constr. Servs. Corp. v. Virgins Islands Hous. Auth.*, 98 Fed. App'x 156, 159 (3d Cir. 2004) (quoting *Newark Stereotypers' Union v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)).

[32] *Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. 13-2930, 2016 WL 1642414, at *6 (E.D. Pa. Apr. 26, 2016) (collecting cases).

[33] *Id.* (collecting cases).

[34] CPR's Brief in Supp. of Pet. to Confirm Arbitration Award [Doc. No. 31] at 8.

proceeding, judgment, or the like."[35] Therefore, Miller's decision to deny Devon Park's request

that "the Arbitration be stayed until it can be determined whether the actions filed by Deutsche

Bank in Delaware and New York will be able to resolve all of the disputes between the parties"[36]

constituted a refusal "to postpone the hearing" under § 10(a)(3).

Second, CPR asserts that by quitting the arbitration, and not making its arguments in

favor of a stay at the Final Hearing, Devon Park waived the arguments it presents here.[37] The

Third Circuit has held that "[i]f a party has clearly agreed to arbitrate and has qualms only with

procedural issues concerning the arbitration, then it must present those issues to the arbitrator

rather than save them for presentation to the District Court."[38] Here, before Devon Park quit the

arbitration, it raised its argument "with sufficient thoroughness" in a nine-page request for stay

sent to Arbitrator Miller,[39] and Miller explicitly denied the request.[40] As the issue of whether to

stay the arbitration was raised and fully resolved, Devon Park did not waive its argument and is

entitled to judicial review of its claim.[41]

Turning to the merits, Devon Park asserts that it presented Arbitrator Miller with

sufficient cause to postpone the hearing based on Deutsche Bank's lawsuits. Specifically, Devon

Park argues that the refusal to postpone the hearing deprived it of a fair hearing because

Deutsche Bank—the real party in interest—was excluded from participating and because

proceeding held the risk that Devon Park would be subject to inconsistent and competing

---

[35] Stay, Black's Law Dictionary (11th ed. 2019); *see also El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (construing a motion for a continuance as a postponement under § 10(a)(3)).

[36] Ex. B, Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19-2] at 1.

[37] CPR's Brief in Supp. of Pet. to Confirm Arbitration Award [Doc. No. 31] at 9.

[38] *Langlais v. Pennmont Ben. Servs., Inc.*, 527 F. App'x 215, 219 (3d Cir. 2013).

[39] *Id.* at 20.

[40] Arbitration Award at 6.

[41] *Id.* at 6.

judgments. While these are real concerns that could have justified a stay, "the question before the Court is whether [Miller] had any reasonable basis to deny" Devon Park's request for a stay.[42]

The Court holds that Arbitrator Miller had a reasonable basis. CPR claimed that Devon Park's refusal to pay distributions violated the LP Agreement. The LP Agreement specified that disputes regarding the agreement "shall be determined by arbitration."[43] When Devon Park requested a stay to allow for judicial determination of Deutsche Bank's claims, the arbitration proceedings had already been underway for close to a year—with extensive discovery having already been completed and a Final Hearing date set.[44] Moreover, Arbitrator Miller determined that Deutsche Bank's claims did not prevent him from reaching a decision because the LP Agreement did not permit Devon Park to withhold distributions when another party claimed a right to that distribution.[45] Miller further explained that "Delaware statutory law provides that a limited partner's alleged creditor . . . has no rights respecting a partnership interest, distributions, or other partnership property without first obtaining a judgment against that partner and then obtaining a charging order."[46] Considering that Devon Park and CPR agreed to arbitrate such disputes, both parties had time to prepare for the arbitration, the case was close to concluding, and Arbitrator Miller determined that he could reach a decision on the limited issue without including Deutsche Bank, there was a reasonable basis to deny Devon Park's request for a stay.

---

[42] *Impala*, No. 13-2930, 2016 WL 1642414, at *6; *see also Floyd Co. Bd. of Educ. v. EUA Cogenex Corp.*, 198 F.3d 245 (6th Cir. 1999) (unpublished) ("The issue before the court was not whether the Board's request was reasonable, but rather whether the arbitrator's decision rested on any reasonable foundation.").

[43] Arbitration Award at 2 (quoting Section 13.8 of the LP Agreement).

[44] *See Floyd*, 198 F.3d 245 ("Such a reasonable basis includes moving the case on to a conclusion where both parties had adequate notice and time to prepare, guarding against an apparent tactical maneuver to delay the proceedings, or simply guarding against unreasonable scheduling conflicts.").

[45] Arbitration Award at 10.

[46] *Id.*

The Court's conclusion is bolstered by the fact that Miller acted to "mitigate the effects" of denying Devon Park's request for a stay by suspending any obligation that conflicted with the Delaware court's orders.[47] Thus, the arbitration determined the limited issue before it—whether Devon Park was in breach of the LP Agreement by withholding distributions from CPR—and then suspended Devon Park's obligations pending the resolution of Deutsche Bank's claims in the Delaware litigation. "Arbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement," and Miller acted within the bounds of that discretion.[48]

### B.  Arbitrator Miller's Denial of Devon Park's Counter-Claim

An arbitrator exceeds his power and "subjects his award to judicial vacatur under § 10(a)(4), when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether."[49] "In other words, the task of an arbitrator is to interpret and enforce a contract. When he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur."[50] Thus, under § 10(a)(4), "[t]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award."[51]

---

[47] *Impala*, No. 13-2930, 2016 WL 1642414, at *7.

[48] *Maiocco v. Greenway Capital Corp.*, No. 97-0053, 1998 WL 48557, at *6 (E.D. Pa. Feb. 2, 1998) (citing *Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac RR Co.*, 516 F.Supp. 1305, 1313 (D.C. 1981)); *see also United Steelworkers of Am., AFL-CIO-CLC v. Bldg. & Const. Trades Dep't of Am. Fed'n of Labor-Cong. of Indust. Organizations*, No. 95-6737, 1996 WL 596125, at *9 (E.D. Pa. Oct. 17, 1996).

[49] *Sutter*, 675 F.3d at 219–20 (citing *Ario*, 618 F.3d at 295–96).

[50] *Id.* at 220 (citing *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005)).

[51] *Ario*, 618 F.3d at 295–96 (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)); *Hankin v. JDS Uniphase Corp.*, No. 11-3149, 2012 WL 5426699, at *3 (E.D. Pa. Nov. 7, 2012); *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008) ("For an award to be

Devon Park's argument is based on Miller dismissing its "counterclaim, which sought a finding as to whether the Assignment Agreement was valid, binding, and enforceable."[52] According to Devon Park, a threshold question was whether the assignment was valid, because otherwise, CPR was a nonparty to the agreement to arbitrate and could not initiate the arbitration proceedings. Therefore, Devon Park asserts that "the Arbitrator exceeded his contractual powers by rendering an award to a party who may not have had the right to arbitrate with Devon Park in the first instance."[53]

CPR argues that Delaware law supports Miller's decision to dismiss Devon Park's counterclaim. According to CPR, because Devon Park's counterclaim was based on SHI's alleged misrepresentations when assigning its interest to ULM/CPR, SHI was a necessary and indispensable party to Devon Park's challenge of the assignment under Delaware's declaratory relief statute, which requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."[54]

Devon Park responds with three arguments: 1) that its counterclaim was based on misrepresentations by both CPR and SHI, either of which would have rendered the assignment void; 2) that the Delaware rules for declaratory judgments do not apply to JAMS arbitration

---

'completely irrational,' it is not enough that a court find that the arbitrators erred, but rather it must find that their decision indeed escaped the bounds of rationality."), *aff'd*, 331 F. App'x 925 (3d Cir. 2009).

[52] Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19] at 11.

[53] *Id.*

[54] CPR's Brief in Supp. of Pet. to Confirm Arbitration Award [Doc. No. 31] at 13 (quoting 10 Del. C. § 6511); *Furnari v. Wallpang, Inc.*, No. 13C-0-4287, 2014 WL 1678419, at *10 (Del. Super. Ct. Apr. 16, 2014) ("[B]ecause a declaratory judgment determines a party's rights, all persons with any interest that would be affected by a declaration must be made a party."); *Kirkwood Fitness and Racquetball Clubs, Inc. v. Mullaney*, No. N11C-02-073, 2011 WL 2623949, at *2 (Del. Super. Ct. June 29, 2011).

proceedings; and alternatively, 3) that Deutsche Bank, not SHI, was the necessary and indispensable party because Deutsche Bank was seeking the proceeds.[55]

Devon Park's arguments are unavailing. First, Miller determined that the counterclaim "sought a determination whether [the assignment] was a valid, binding and enforceable contract in light of certain representations SHI made in Sections 3(c), 3(d) and 3(f)" of the Assignment Agreement.[56] Devon Park has not provided evidence that Miller's understanding of the counterclaim as being based only on SHI's alleged misrepresentations lacked support from the record; indeed, Devon Park has not even provided the counterclaim to the Court.[57] Second, JAMS Rule 24(c) provides that "[i]n determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties,"[58] and the LP Agreement specifies that Delaware law applies to arbitration proceedings.[59] Third, Devon Park's counterclaim asserted that misrepresentations in the assignment from SHI to CPR vitiated that agreement. Although Deutsche Bank ultimately sought the distributions from SHI, vitiating the assignment would

---

[55] Devon Park's Reply in Supp. of Cross-Motion to Vacate [Doc. No. 45] at 6.

[56] Arbitration Award at 4.

[57] The only evidence Devon Park has provided to the Court is a single contextless sentence from a document that Devon Park did not provide to the Court: "Associates signed the consent to assignment 'in reliance on the agreements and representations [by both SHI and ULM] set forth in the Assignment and Assumption Agreement.'" Devon Park's Reply in Supp. of Cross-Motion to Vacate [Doc. No. 45] at 5 n.5 (citing Respondents' Answer to Demand for Arbitration and Countercl. ¶ 67, at 21, Ref. No. 1450004714 (JAMS Pa. July 14, 2017)) (brackets added by CPR). The internal quotation is the general language from the Consent to Assignment that Devon Park signed. *See* Ex. 1, Carroll Aff. [Doc. No. 32-1]. Assuming that this sentence was quoted somewhere in Devon Park's counterclaim, as Devon Park alleges, does not provide adequate support that the counterclaim itself was based on misrepresentations by both SHI and CPR. A counterclaim based only on one party's misrepresentations—either SHI's or ULM's—would have quoted the exact same sentence to show that Devon Park's consent was based on that party's representations in the Assignment Agreement. Moreover, CPR has presented evidence that the counterclaim was based only on alleged misrepresentations by SHI. *See* CPR's Reply Brief in Supp. of its Petition to Confirm the Arbitration Award [Doc. No. 50] at 8; *see also* Ex. 25, Carroll Aff. [Doc. No. 32-5] at 2–5. Therefore, Devon Park's single contextless quotation is not enough to disturb Miller's determination that the counterclaim was based only on SHI's alleged misrepresentations, especially considering CPR's contrary evidence.

[58] JAMS, *JAMS Comprehensive Arbitration Rules & Procedures*, https://www.jamsadr.com/rules-comprehensive-arbitration/ (last visited April 21, 2020).

[59] Arbitration Award at 2.

have made SHI the party entitled to the distributions (at least until Deutsche Bank obtained a charging order) and, thus, SHI had an interest.[60] Therefore, there was support in the record for Miller to determine that the assignment was challenged only based on alleged misrepresentations by SHI,[61] that Delaware law on necessary and indispensable parties governed,[62] and that under Delaware law Devon Park's counterclaim was "procedurally improper" because "SHI was not a party to the arbitration proceedings."[63]

Moreover, although Miller dismissed Devon Park's counterclaim, he permitted discovery relating to the LP Agreement, the Assignment Agreement, and related documents, and explained that defenses based on these documents were relevant and would be admissible at the Final Hearing.[64] The Court cannot hold that Miller's decision to dismiss the counterclaim was irrational when he expressly allowed Devon Park to obtain discovery and argue that the assignment was invalid at the Final Hearing. Devon Park instead chose to quit the arbitration and cannot now ask the Court to absolve it of the consequences of its actions.[65]

---

[60] 10 Del. C. § 6511.

[61] Arbitration Award at 4.

[62] *Id.* at 2.

[63] *Id.* at 5. CPR also argues that Devon Park waived the argument because it was raised as a counterclaim rather than as an affirmative defense. *See* CPR's Brief in Supp. of Pet. to Confirm Arbitration Award [Doc. No. 31] at 13–14. Delaware Court of Chancery Rule 8(c) provides that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively . . . fraud . . . and any other matter constituting an avoidance or affirmative defense." Del. Ct. Ch. R. 8(c); *see also Knutkowski v. Cross*, No. 4889-VCG, 2011 WL 6820335, at *2 (Del. Ch. Dec. 22, 2011). "Failure to raise an affirmative defense amounts to a waiver," *Mason v. United Servs. Auto. Ass'n*, No. 94C-09-013, 1998 WL 473046, at *2 (Del. Super. Ct. Apr. 21, 1998), unless the court exercises its "discretion to allow the defendant to amend her answer." *Knutkowski*, 2011 WL 6820335, at *2. Although the Court does not base its ruling on this argument, to the extent that the Delaware pleading rules may apply to the arbitration, the rules provide further support for Miller's decision to dismiss the counterclaim.

[64] *See* Ex. 15, Carroll Aff. [Doc. No. 32-4]; Arbitration Award at 6.

[65] Devon Park also argues that Miller's award is subject to vacatur under § 10(a)(4) because Miller "awarded the Proceeds to CPR without considering Deutsche Bank's competing, and potentially superseding and/or superior, claim." Devon Park's Reply in Supp. of Cross-Motion to Vacate [Doc. No. 45] at 5. However, as explained above, Miller determined, based on the LP Agreement and Delaware law, that Deutsche Bank's claim did not preclude him from reaching a decision in the arbitration proceeding, and also suspended judgment until the Delaware court resolves Deutsche Bank's claims. Moreover, Miller provided Devon Park with the opportunity to present its defense at the Final Hearing but Devon Park chose not to participate. Therefore, it was not irrational for Miller to decide the

## C.  Arbitrator Miller's Prejudgment Interest Determination

Devon Park asserts that the Court has the authority to modify the award under § 11 of the FAA because "exceptional or unusual circumstances exist making the award of interest inequitable" as it held onto the distributions "not because it has a claim to them, apart from its indemnification rights, but because there are competing claimants to those funds and Devon Park has been unable to determine, without hazard to itself, who is the proper recipient of those funds."[66] Therefore, Devon Park argues that it "should not be penalized for seeking court guidance and acting responsibly in taking affirmative steps to determine to whom it should rightfully pay the Proceeds."[67]

Section 11 provides three exclusive grounds pursuant to which a district court "may make an order modifying or correcting" an arbitration award "so as to effect the intent thereof and promote justice between the parties."[68] Devon Park's argument appears to rest on the mistaken belief that the reference in § 11 to "justice" provides a fourth ground—when a district court determines that the award was inequitable—for modifying an arbitration award.[69] Not so. Justice only comes into the equation after the district court determines that one of the three grounds for modification stated in § 11 applies.[70] Therefore, Devon Park's argument that it was inequitable for it to pay prejudgment interest does not provide grounds to modify the award.

---

issue before him—whether Devon Park was in breach of the LP Agreement—and then suspend judgment until a court decision on Deutsche Bank's claim to the distributions.

[66] Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19] at 13 (quoting *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986)).

[67] *Id.*

[68] *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 n.4, 584 (2008) (quoting 9 U.S.C. § 11).

[69] Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19] at 13.

[70] *See* 9 U.S.C. § 11.

Even if equity could provide grounds to modify the award, Devon Park would not be entitled to modification because an award of prejudgment interest is not a penalty.[71] Rather, prejudgment interest is awarded when the losing party had use of the damage award throughout the proceedings to fully compensate the winning party for its damages.[72] "The good or bad faith of the [losing] party is not of dispositive significance."[73] Here, Devon Park had use of the Withheld Distributions, and therefore, equity demands that CPR be compensated for its loss.[74]

Devon Park alternatively argues that, pursuant to § 11(a), the Court should modify the award of prejudgment interest because Delaware law "provides for simple not compounded interest."[75] However, Devon Park's challenge is that Miller made a mistake of law, not that Miller miscalculated figures. Therefore, § 11 does not provide a basis to modify the award to simple interest, and in any event, Delaware courts allow for compound interest rates.[76] Accordingly, the Court will not modify Arbitrator Miller's award of prejudgment interest.

---

[71] *Stroh*, 783 F.2d at 752–53.

[72] *See id.* at 753.

[73] *Id.* at 752.

[74] Devon Park asserts that it "has derived no benefit from holding the Proceeds during this period" because it "has held the Proceeds in a segregated account where the funds have continued to accrue simple interest." Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19] at 13. However, prejudgment interest is intended to make the winning party whole. What matters is that CPR was denied the use of the distributions while Devon Park was in breach of the LP Agreement, not what Devon Park chose to do with the money.

[75] Devon Park's Mem. of Law in Supp. of their Counterclaims/Cross-Motion [Doc. No. 19] at 14 (citing *Weinberger v. UOP, Inc.*, 517 A.2d 653, 657 (Del. Ch. 1986)).

[76] *CertiSign Holding, Inc. v. Kulikovsky*, No. 12055-VCS, 2018 WL 2938311, at *29 (Del. Ch. June 7, 2018) (citing *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 173 (Del. 2002) ("The Court's broad discretion in fixing the interest rate includes the authority to award compound interest."); *ReCor Med., Inc. v. Warnking*, No. 7387-VCN, 2015 WL 535626, at *1 (Del. Ch. Jan. 30, 2015); *Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 756 (Del. Ch. 2007). Devon Park correctly did not assert this claim pursuant to § 10. *See Hall*, 552 U.S. at 586 (explaining that "mistake of law" is not included in the §§ 10 and 11 grounds for vacation or modification of an arbitration award); *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016) (quoting *Newark Stereotypers' Union*, 397 F.2d at 599 (explaining that an error of law only justifies vacating an arbitration award when it "so affects the rights of a party that it may be said that he was deprived of a fair hearing.")).

### D.  Attorneys' Fees

"Under the American rule, each party normally must bear the burden of its own legal expenses, including attorneys' fees. One of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons."[77] CPR asserts that it is entitled to attorneys' fees because Devon Park acted in bad faith by quitting the arbitration without justification. Although the Court does not agree with Devon Park's decision to quit the arbitration and then dispute the resulting judgment, Devon Park's arguments were not frivolous and, considering the unusual and complex circumstances, CPR has not shown that Devon Park acted in bad faith when it quit the arbitration.[78] Therefore, the Court will not award attorneys' fees.

### V.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** CPR's motion to confirm, **DENY** Devon Park's cross-motion to vacate the arbitration award, and **DENY** CPR's request for attorneys' fees. An order will be entered.

---

[77] *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982) (citing *Straub v. Vaisman & Co.*, 540 F.2d 591, 600 (3d Cir. 1976)).

[78] *Cf. Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993) (explaining that parties in arbitration cannot withhold arguments and then raise them in federal court because such conduct undermines the purpose of arbitration).